J-S69014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: MARTIN LORBER, | : | IN THE SUPERIOR COURT OF |
| AN ALLEGED INCAPACITATED PERSON | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: EDWARD D. | : | |
| PLOTZKER, M.D. PC | : | No. 1081 EDA 2015 |

Appeal from the Order March 12, 2015
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s): 224 of 2014

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED NOVEMBER 25, 2015**

Appellant, Edward D. Plotzker, M.D. PC, purports to appeal from the order entered in the Delaware County Court of Common Pleas, Orphans' Court, which struck his collection of *pro se* motions titled: "Motion to Halt all Proceedings, Motion to Recover and Escrow Funds, Motion Seeking Recusal of [the Trial Judge], and Motion Removing [the Court-Appointed Successor Plenary Guardian] for Dereliction of [Decedent]."  We quash the appeal.

The relevant facts and procedural history of this case are as follows. On October 24, 2011, Martin Lorber ("Decedent") was admitted to the personal care unit of Martins Run, an assisted living/nursing home facility in Media, Pennsylvania.  Decedent was transferred to the nursing home facility on April 25, 2013, where he remained until his death.  Judith Plotzker is Appellant's wife and Decedent's daughter and only child.  Decedent named Ms. Plotzker as his agent pursuant to a durable power of attorney ("POA")

dated May 12, 2011.

On April 1, 2014, Martins Run filed a petition for adjudication of Decedent's incapacitation and appointment of a guardian. At the time of the petition, Decedent was ninety-five years old. Martins Run alleged, *inter alia*, Ms. Plotzker had failed to pay for nursing home services rendered for Decedent and failed or delayed to respond to calls regarding Decedent's care and the status of his account. Martins Run also expressed concerns regarding Ms. Plotzker's access to and control of Decedent's income and financial resources. Martins Run highlighted that Ms. Plotzker had transferred title of Decedent's residence to herself and Decedent as joint tenants with the right of survivorship in April 2012. The court held a hearing on May 12, 2014, after which the court appointed a guardian *ad litem* over Decedent's person and a temporary emergency guardian over Decedent's estate, due to Ms. Plotzker's alleged financial impropriety. The court held a subsequent review hearing on June 16, 2014, at which time the court-appointed guardians represented that Ms. Plotzker had depleted Decedent's account with Merrill Lynch and had written herself checks in the amount of $144,937.00, as well as checks totaling $55,604.90 to others.

Following the hearing, the court adjudicated Decedent as incapacitated, suspended Ms. Plotzker's POA, directed Ms. Plotzker to provide an accounting of the disputed checks, and appointed the temporary emergency guardian of Decedent's estate as plenary guardian of Decedent's

person and Decedent's estate.[1]  On July 2, 2014, Martins Run filed a petition to declare as void the transfer of real property from Decedent to Decedent and Ms. Plotzker as joint tenants with the right of survivorship.  On August 6, 2014, Ms. Plotzker filed a "letter motion" requesting reversal of all court orders in the case and dismissal of Martins Run's action.  On August 13, 2014, Appellant filed an "*amicus curiae*" response in the matter.  The court held a hearing on August 20, 2014.  Ms. Plotzker did not attend.  After the hearing, the court declared as void the April 20, 2012 transfer of real property.  The court denied Ms. Plotzker's "letter motion" on August 27, 2014; the court did not address Appellant's "*amicus curiae*" response. Appellant filed another "*amicus curiae*" document on September 16, 2014, which the court did not address.  On November 10, 2014, the court appointed a successor plenary guardian of Decedent's person and Decedent's estate.  Decedent died on January 19, 2015.

On March 9, 2015, Appellant filed the current collection of *pro se* motions titled: "Motion to Halt all Proceedings, Motion to Recover and Escrow Funds, Motion Seeking Recusal of [the Trial Judge], and Motion Removing [the Court-Appointed Successor Plenary Guardian] for Dereliction of [Decedent]."  Appellant claimed, *inter alia*, Martins Run failed to return Decedent's personal effects to Ms. Plotzker; the trial court lacked authority to void the transfer of real property; Decedent's stay at Martins Run "was

---

[1] Nothing in the certified record indicates that Ms. Plotzker complied with the court's order directing her to supply an accounting.

- 3 -

enticed by illegal acts" by Martins Run, the trial court, and others, which resulted in the "*de facto* incarceration of [Decedent]"; Decedent's contract with Martins Run is void; the trial court, Martins Run, and the court-appointed plenary guardians engaged in elder abuse; and the trial court must recuse itself. Appellant cited no legal authority whatsoever to support the allegations set forth in his motions. The court struck the motions on March 12, 2015, based on Appellant's unauthorized practice of law. Appellant filed a motion for reconsideration[2] and a notice of appeal on April 9, 2015. On April 14, 2015, by separate orders, the court denied Appellant's motion for reconsideration and struck Appellant's notice of appeal, due to Appellant's continued unauthorized practice of law.[3]

Martins Run filed an application in this Court on August 3, 2015, to quash the appeal, claiming Appellant lacks standing to appeal because he is not an interested party in the underlying proceedings. Appellant responded on August 20, 2015, claiming, *inter alia*, he is a "whistleblower" concerning events which took place at Martins Run; counsel for Martins Run is a "co-conspirator"; the trial court is "impaired"; and suggesting he can practice

_____

[2] In his motion for reconsideration, Appellant alleged, *inter alia*, the trial court is "impaired," where it improperly deemed Appellant unauthorized to practice law. Appellant insisted he is permitted to act as "*amicus curiae*." Appellant also claimed he is a "whistleblower." Appellant cited no legal authority to support these assertions.

[3] Based on the court's disposition, it did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none.

law because Abraham Lincoln practiced law without attending law school.[4]

Preliminary, Pennsylvania Rule of Appellate Procedure 501 provides:

### Rule 501.  Any Aggrieved Party May Appeal

Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom.

Pa.R.A.P. 501.  "Whether…a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party, etc."  Pa.R.A.P. 501, *Note*.  "The Appellate Rules do not define the term 'party.'  However, the note following the definitional rule, Pa.R.A.P. 102, states that [the] rule is based on 42 Pa.C.S. § 102, which defines 'party' as 'a person who commences or against whom relief is sought in a matter.'"  ***Matter of Brown***, 507 A.2d 418, 420 (Pa.Super. 1986) (quoting ***Newberg by Newberg v. Board of Public Education***, 478 A.2d 1352, 1354 (Pa.Super. 1984)).  "[A]n appeal by one who was not a party to a proceeding in the trial court must be quashed."  ***Brown, supra*** (quoting ***Newberg, supra***).

In the context of incapacity and guardianship proceedings, Section

---

[4] Appellant did not include a statement of questions presented in his appellate brief.  ***See*** Pa.R.A.P. 2116(a) (explaining statement of questions involved must state concisely issues to be resolved, expressed in terms and circumstances of case but without unnecessary detail; no question will be considered unless it is stated in statement of questions involved or is fairly suggested thereby); ***Smathers v. Smathers***, 670 A.2d 1159 (Pa.Super. 1996) (explaining omission of statement of questions presented is particularly grievous because statement of questions defines specific issues appellate Court is asked to review).

5511 of the Decedents, Estates and Fiduciaries Code provides, in relevant part:

### § 5511. Petition and hearing; independent evaluation

**(a) Resident.**—The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate. The petitioner may be any person interested in the alleged incapacitated person's welfare. The court may dismiss a proceeding where it determines that the proceeding has not been instituted to aid or benefit the alleged incapacitated person or that the petition is incomplete or fails to provide sufficient facts to proceed. Written notice of the petition and hearing shall be given in large type and in simple language to the alleged incapacitated person. The notice shall indicate the purpose and seriousness of the proceeding and the rights that can be lost as a result of the proceeding. It shall include the date, time and place of the hearing and an explanation of all rights, including the right to request the appointment of counsel and to have counsel appointed if the court deems it appropriate and the right to have such counsel paid for if it cannot be afforded. The Supreme Court shall establish a uniform citation for this purpose. A copy of the petition shall be attached. Personal service shall be made on the alleged incapacitated person, and the contents and terms of the petition shall be explained to the maximum extent possible in language and terms the individual is most likely to understand. Service shall be no less than 20 days in advance of the hearing. **In addition, notice of the petition and hearing shall be given in such manner as the court shall direct to all persons residing within the Commonwealth who are *sui juris* and would be entitled to share in the estate of the alleged incapacitated person if he died intestate at that time, to the person or institution providing residential services to the alleged incapacitated person and to such other parties as the court may direct, including other service providers.** …

20 Pa.C.S.A. § 5511(a) (emphasis added).  Thus, under Section 5511(a):

> [O]nly those persons who are *sui juris* and would be entitled to share in the alleged [incapacitated person's] estate are required to be notified of impending [incapacitation] proceedings.  **It follows that the class of individuals entitled to challenge the adjudication should be limited to these same intestate heirs and the alleged [incapacitated person] himself.**

***Brown, supra*** at 419 (emphasis added) (quashing appeal from order adjudicating former client as incapacitated under Section 5511 and appointing guardian of estate; appellant was non-relative who possessed no interest as intestate heir and was not even entitled to notification of incapacitation proceedings; appellant had no protectable interest before trial court; appellant's former position as attorney-in-fact for incapacitated person did not confer standing to object to adjudication of incapacitation on appeal, where appellant had no standing to object to proceedings before trial court; thus, appellant had no special statutory right to appeal under Section 5511(a); further, appellant's participation as witness at hearing on incapacitation did not make her party to action or otherwise establish general right to review under Pa.R.A.P. 501).

Instantly, Martins Run, the institution providing nursing care and residential services to Decedent, commenced the incapacitation proceedings pursuant to Section 5511(a).  Significantly, Appellant is related to Decedent only through marriage to Decedent's daughter.  He would not have been entitled to share in Decedent's estate if Decedent died intestate at the time

Martins Run commenced the proceedings. *See* 20 Pa.C.S.A. § 2103 (providing order of intestate succession to others than surviving spouse).[5] Additionally, the record shows Appellant resides in New York. Thus, Appellant did not possess a protectable interest in the proceedings concerning Decedent's incapacitation and has no statutory right to appeal. *See* 20 Pa.C.S.A. § 5511(a); **Brown, supra**.

Additionally, Appellant did not commence the underlying incapacitation proceedings and Martins Run did not initiate those proceedings against Appellant, as is necessary to deem Appellant a "party" to the action for purposes of Rule 501. **See** Pa.R.A.P. 501; **Brown, supra**. The fact that Appellant might have attended one or more of the hearings before the trial court or filed motions in those proceedings as self-designated "*amicus curiae*" likewise does not entitle Appellant to a general right to review. **See id. See also Newberg, supra** (quashing appellants' appeal, where appellants participated in proceedings before trial court solely as *amicus curiae*; consequently, appellants had no standing to appeal trial court's final decree); **In re Petition for Referendum to Amend Home Rule Charter of City of Pittsburgh**, 450 A.2d 802 (Pa.Cmwlth. 1982) (quashing appellant's appeal, where appellant appeared solely before trial court proceedings as *amicus curiae*; "*amicus curiae*" literally means "a friend of the court;" term applies to someone who interposes in judicial proceeding to

---

[5] Decedent's wife predeceased him.

assist court or who gives information on some legal matter before court; *amicus curiae* is not party to underlying action and has no standing to appeal).

Further, in striking Appellant's current motions, the trial court explained:

> Nothing in the record before this [c]ourt indicates that [Appellant] ever attended and/or graduated from an accredited law school, satisfactorily completed the Pennsylvania bar examination, or provided the Pennsylvania Board of Law Examiners with evidence of no prior conduct which would indicate a character that is incompatible with the standards expected of members of the Pennsylvania Bar. In fact, [Appellant] represented himself to this [c]ourt as a Medical Doctor, not as an attorney. [Therefore,]…[Appellant] engaged in the unauthorized practice of law when he filed the Motions.
>
> In the Motions, [Appellant] echoed the arguments made by [Ms.] Plotzker in her Letter Motion and made many scathing allegations against Martins Run, [the successor plenary guardian], and [the trial court]. The theme of [Appellant's] filing was that the entire proceeding before this [c]ourt was illegal and improper. While it is important to note that all of [Appellant's] allegations and arguments are completely without merit, it is unnecessary for this [c]ourt to address the merits of those allegations and arguments because [Appellant] is not a party in interest in this matter and engaged in the unauthorized practice of law on behalf of his wife, [Ms.] Plotzker, when he filed those motions.

(Trial Court Opinion, filed June 24, 2015, at 5). We accept the court's analysis. Appellant has no special statutory right to appeal pursuant to Section 5511; no general right to review under Pa.R.A.P. 501; and is not on appeal as an attorney-of-record in this case. Accordingly, to the extent

Appellant's appeal remains active on this Court's docket, following the trial court's April 14, 2015 order striking Appellant's notice of appeal, we quash the appeal. **See Brown, supra**.

Appeal quashed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2015